**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Keith James Russell,<br><br>　　　　　Defendant. | CR 12-02127-TUC-CKJ(JR)<br><br>**REPORT AND RECOMMENDATION** |

　　　　This matter was referred to Magistrate Judge Rateau for all pretrial matters. On June 24, 2013, Defendant Keith James Russell ("Defendant") filed a Motion to Dismiss for Lack of Reasonable Suspicion. (Doc. 47). The government filed a Response on June 28, 2013 (Doc. 48).[1] The motion was heard by Magistrate Judge Rateau on September 4, 2013. Defendant was present at the hearing and represented by counsel. The Government presented one witness, who was questioned and cross-examined. Four exhibits were admitted into evidence. The defense did not present

---

[1] The government filed a supplemental response on August 7, 2013 (Doc. 58), but then withdrew it on August 14, 2013. (Doc. 60).

1

any witnesses. Having considered the matter, the Magistrate Judge submits the following Findings of Fact and Conclusions of Law and recommends that Defendant's Motion be denied.[2]

**I.      Findings of Fact**

Wendy Cordova testified that she has been a Border Patrol Agent working at the Willcox station for over eight years. (TR 5).[3] She is familiar with the area of the State Route ("SR") 191 checkpoint and knows that alien and drug smugglers sometimes try to avoid the checkpoint. (TR 7). The checkpoint is approximately 50 miles from the border. (TR 44). Both in her personal experience and generally within her agency, when vehicles try to avoid a checkpoint, they are usually involved in drug or alien smuggling. (TR 15).

There are several different ways drivers can avoid the checkpoint. (TR 7). One common way is to take SR 191 to SR 181, go north on Bell Ranch Road, then west on Parker, then back to SR 191, then to I-10. (TR 9).

As a way of alerting Border Patrol when people are trying to avoid the checkpoint, Border Patrol put up electronic sensors in the area. (TR 10). When a sensor goes off, Tucson dispatch calls agents out and whoever is closest, responds. (TR 11). The sensor not only gives the location of the sensor but also indicates

---

[2] Trial is scheduled for October 1, 2013; the plea deadline is September 13, 2013. (Doc 52).
[3] TR refers to the transcript of the September 4, 2013, hearing.

1  whether there is vehicle and/or foot traffic.  (TR  11-12).   One such sensor was
2  located in the area of Bell Ranch Road.  (TR 45).
3         On September 23, 2012, Agent Cordova was working the 6 a.m. to 2 p.m.
4  shift.  (TR 12).  At about 6:50 a.m., she was parked on Birch Road and Kansas
5  Settlement Road watching traffic when she was alerted to vehicle sensor activity.
6  (TR 13, 14).   She responded to the area of the sensor activity and saw only one car
7  on that road, a four-door red sedan heading west on Bell Ranch Road.  (TR 16, 18,
8  33).  While there are a couple of hundred houses in the Sunizona area of SR 181 and
9  SR 191, the rest of the area is desolate.  (TR  24, 43, 44; Ex 1).
10        Agent Cordova made a U-turn and began following the sedan.  (TR  35).  She
11  noticed that the car was very clean considering the kind of road it was on.  (TR 18).
12  Although Bell Ranch Road is a maintained road, it is nonetheless a dirt road and a
13  rougher area of travel than a paved highway such as SR 181.  (TR  10, 30).  The road
14  is hard on vehicles and cars get dirty.  (TR 10).  According to the agent, she has seen
15  cars that have been driven on a paved highway and they are generally clean.  (TR
16  47).  Cars that have been driven mainly on dirt roads have for example, accumulated
17  dirt on the tires, on the chassis and on the top of the car.  (TR 41, 47).  This car was
18  clean except for a significant amount of dust on the bumper.  (TR 39, 40, 41, 47).  In
19  her experience, this meant that the car had just gotten off of the freeway and onto a
20  dirt road.  (TR 46).  Additionally, the agent was familiar with the local vehicles in the
21  area and it is ranchers who most commonly drive in that area.  (TR 20, 44).  This car
22  was not from the local area.  (TR 44).

1    Agent Cordova ran a registration check on the car and it came back as
2    belonging to a female Hispanic out of Phoenix. (TR 18, 19). The car was being
3    driven by a man. (TR 18). She found that unusual because in her experience, cars
4    registered out of Phoenix that are on these dirt roads at 6:50 a.m. are often involved
5    in alien or drug smuggling. (TR 19, 20, 42).

6    Agent Cordova also noticed that the car, a Lincoln which she believes is a
7    better luxury car, seemed kind of heavy towards the back, as if it was hauling
8    something heavy. (TR 18, 37). The agent did admit under cross examination, that
9    she did not have any experience with the mechanics of cars nor did she know
10   whether that kind of car normally rides low. (TR 37, 38). But the fact that it
11   appeared to her that it was riding low combined with all the other factors made her
12   think something was not right. (TR 38). Based on these factors, Agent Cordova
13   stopped the car. (TR 22). She found six bundles of marijuana in the back seat and
14   eight in the trunk, totaling 347 pounds. (Id.; Ex 2, 3, 4).

15   **II.    Conclusions of Law**

16   The Fourth Amendment protects the right of the people to be secure in their
17   person, houses, papers, and effects against unreasonable searches and seizures.
18   *United States v. Hensley*, 469 U.S. 221, 226 (1985). Consistent with the Fourth
19   Amendment, police may stop persons in the absence of probable cause under limited
20   circumstances. *Terry v. Ohio*, 392 U.S. 1, 88 (1968). Law enforcement agents may
21   briefly stop a moving automobile to investigate a reasonable suspicion that its
22   occupants are involved in criminal activity. *Hensley*, 469 U.S. at 226.

Reasonable suspicion exists when an officer is aware of specific articulable facts, that, together with rational inferences drawn from them, reasonably warrant a suspicion that the person to be detained has committed or is about to commit a crime. *United States v. Cortez*, 449 U.S. 411, 416-18 (1981). When assessing the reasonableness of the police officer's actions, the court must consider the totality of the circumstances which confronted the officer at the time of the stop. *United States v. Sokolow*, 490 U.S. 1, 8 (1989).

The articulable facts forming the basis of a reasonable suspicion must be measured against an objective reasonableness standard, not by the subjective impressions of a particular officer. *Gonzalez-Rivera v. I.N.S.*, 22 F.3d 1441, 1445 (9th Cir. 1994). An officer is however, "entitled to assess the facts in light of his experience in detecting illegal entry and smuggling." *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975). But the inferences drawn from an officer's experience must be objectively reasonable. *United States v. Montero–Camargo*, 208 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

In relation to stops by border patrol, the totality of circumstances may include:

> (1) characteristics of the area; (2) proximity to the border; (3) usual patterns of traffic and time of day; (4) previous alien or drug smuggling in the area; (5) behavior of the driver, including obvious attempts to evade officers; (6) appearance or behavior of passengers; (7) model and appearance of the vehicle; and, (8) officer experience.

*United States v. Berber–Tinoco*, 510 F.3d 1083, 1087 (9th Cir. 2007) (*quoting United States v. Garcia–Barron*, 116 F.3d 1305, 1307 (9th Cir. 1997)).

Guided by these factors and any other considerations relevant to the totality of the circumstances, the Court must determine whether the factors cited by the Government in support of the stop constitute behavior that should excite the suspicion of a trained border patrol agent that criminal activity is afoot. *See United States v. Rodriquez*, 976 F.2d 592, 595 (9th Cir. 1992), *amended by United States v. Rodriquez*, 997 F.2d 1306 (9th Cir. 1993).

The factors relied upon by Agent Cordova in this case were as follows: sensor activity showed vehicle traffic in an area commonly used by alien and drug traffickers to circumvent the border patrol check point; the area where the senor was located was a desolate area, accessible only by a dirt road; the car was relatively clean indicating that it had recently been on a paved highway; Defendant's car was the only one seen coming out of the area; the car was registered to a woman in Phoenix and was not a car that was familiar to the agent as belonging to one of the locals; and the car was riding low as if it was carrying a heavy load.

Giving due weight to the factual inferences drawn by the law enforcement officers, the Court finds that Agent Cordova had reasonable suspicion to believe that Defendant was engaged in illegal activity. The stop comported with the Fourth Amendment.

**III.     Recommendation for Disposition by the District Judge**

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and Local Rule Civil 72.1, Rules of Practice of the United States District Court, District of Arizona,

the Magistrate Judge recommends that the District Court, after an independent review of the record, DENY Defendant's Motion to Suppress (Doc. 47).

This Report and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment in the case.

The parties have fourteen (14) days from the date of service of a copy of this report and recommendation to file specific written objections with the District Court. See 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure.

Thereafter, the parties have ten (10) days within which to file a response to the objections. No replies are permitted without leave of court.

If any objections are filed, this action should be designated case number: CR 12-2127-TUC-CKJ.  Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to de novo consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 17th day of September, 2013.

_____
Jacqueline M. Rateau
United States Magistrate Judge