WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Keith James Russell,<br><br>　　　　　Defendant. | No. CR-12-02127-TUC-CKJ (JR)<br><br>**ORDER** |

On September 17, 2013, Magistrate Judge Jacqueline Rateau issued a Report and Recommendation, (Doc. 68), in which she recommended denying Defendant's Motion to Dismiss for Lack of Reasonable Suspicion. (Doc. 47). On October 1, 2013, the Defendant filed Objections to Report and Recommendation. (Doc. 70). No response has been filed.

## I.   STANDARD OF REVIEW

The Court reviews *de novo* the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the un-objected to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.,* 170 F.3d 734, 739 (7th Cir. 1999); *See also Conley v. Crabtree,* 14 F.Supp.2d 1203, 1204 (D.Or.1998).

## II.   FACTUAL BACKGROUND

On September 4, 2013, Magistrate Judge Rateau conducted an evidentiary hearing.

1   Border Patrol Agent Wendy Cordova testified for the government.  The Defendant did
2   not present any witnesses.

3   Agent Cordova testified that she has been a Border Patrol Agent working in the
4   Tucson Sector, Willcox Station for the past eight years.  (Hearing Transcript 5) (hereafter
5   "TR").  As such, she is very familiar with the checkpoint on SR 191.  (TR 5).  The
6   checkpoint is about fifty miles from the United States-Mexican border.  (TR 44).  She is
7   also familiar with various detours used by individuals attempting to avoid the SR 191
8   checkpoint.  (TR 7-8).  In an effort to identify individuals smuggling contraband and
9   attempting to avoid the SR 191 checkpoint, the Border Patrol has installed electronic
10  sensors in areas along the commonly used routes to avoid the SR 191 checkpoint.  (TR
11  10-11).  Agent Cordova has experience in responding to sensor activity and discovering
12  individuals smuggling contraband through this area.  (TR 15).  Several of the roads used
13  by individuals attempting to avoid the checkpoint including Bell Ranch Road, Diamond
14  Road and Fort Bowie Road are unpaved dirt roads.  (TR 10).

15  On September 23, 2012, Agent Cordova was working in her capacity as a Border
16  Patrol Agent.  (TR 13).  In the early morning hours, she was alerted to a vehicle sensor
17  alert on Bell Ranch Road.  (TR 12, 14).  Agent Cordova responded to the area alerted by
18  the sensor and observed one vehicle driving on Bell Ranch Road.  (TR 16).  While there
19  are a couple hundred houses in the Sunizona area between I-181 and I-191, the area
20  where Agent Cordova observed the Defendant is desolate.  (TR 24, 43-44).

21  Agent Cordova observed that the Defendant's vehicle was riding low in the rear as
22  though it was carrying something heavy.  (TR 18).  However, she acknowledged that she
23  had no particular experience in the mechanics of the Lincoln four door vehicle being
24  driven by the Defendant or how low the rear of that vehicle normally rides.  (TR 37).
25  The Defendant's vehicle was very clean considering that it was driving on dirt roads[1] and

---

[1] Agent Cordova acknowledged that the vehicle had dust or dirt on the rear bumper.  However in her opinion, vehicles that normally travel that area have significantly more dirt on the chassis and top of the vehicles, which was not present on the Defendant's vehicle.  This indicated to Agent Cordova that the vehicle had only recently been driving on the dirt road.  (TR 40-41).

it was registered to a Hispanic female from Phoenix. (TR 18-19). Agent Cordova explained that the area where the Defendant was observed driving is occupied mostly by ranchers and it is unusual to find a vehicle registered in Phoenix driving in this area. (TR 20). She further explained that in her experience, the majority of alien and drug smugglers passing through that area have their vehicles registered out of Phoenix. (TR 19). Finally, Agent Cordova explained that she is familiar with the local vehicles that routinely travel that area and the Defendant's vehicle was not one of the vehicles she normally observes driving in that area. (TR 42). Based on all of these observations and her experience, Agent Cordova stopped the Defendant and recovered 347 pounds of marijuana in the back seat and trunk of his vehicle. (TR 22).

## III. ANALYSIS

Defendant objects to Magistrate Judge Rateau's finding that Border Patrol Agent Cordova had reasonable suspicion for the investigatory stop of the Defendant. "The [Supreme] Court has recognized that a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Nevada*, 124 S. Ct. 2451, 2458 (2004).

In order to effectuate a lawful stop, the officer must have "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 204 7 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)) see also *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000) ("The quantum of proof needed for reasonable suspicion is less than a preponderance of evidence, and less than probable cause.") (citation omitted).

In deciding whether a reasonable suspicion existed for a stop, the totality of circumstances must be considered. *United States v. Osborn,* 203 F.3d 1176, 1181 (9th Cir.) (quoting *United States v. Cortez,* 449 U.S. 411, 417 (1981)), cert. denied, 530 U.S. 1237 (2000). "All relevant factors must be considered in the reasonable suspicion

1   calculus—even those factors that, in a different context, might be entirely innocuous." *United States v. Fernandez-Castillo*, 324 F.3d 1114, 1117 (9th Cir.) (citing *Arvizu*, 534 U.S. at 277–78), *cert. denied*, 124 S. Ct. 418 (2003). "Reasonable suspicion . . . can arise from information different in quality and content and even less reliable than that required for the establishment of probable cause." *United States v. Mattarolo,* 209 F.3d 1153, 1157 (9th Cir. ) (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)). "The officer's training and experience are factors to consider in determining if the officer's suspicions were reasonable." *Mattarolo,* 209 F.3d at 1157 (citing *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)). "[S]pecific, articulable acts which, together with objective and reasonable inferences, form a basis for suspecting that the particular person . . . is engaged in criminal activity" are required. *United States v. Hernandez-Alvarado*, 891 F.2d 1414, 1416 (9th Cir. 1989) (citation omitted).

"In the context of Border Patrol [stops], the factors to be considered in determining whether 'reasonable suspicion' exists to justify stopping a vehicle include, but are not limited to": 1) characteristics of the area; 2) proximity to the border; 3) usual patterns of traffic and time of day; 4) previous alien or drug smuggling in the area; 5) behavior of the driver, including 'obvious attempts to evade officers'; 6) appearance or behavior of passengers; 7) model and appearance of the vehicle; and 8) officer experience. *United States v. Garcia-Barron*, 116 F.3d 1305, 1307 (9th Cir. 1997) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975)).

In his Objections, Defendant identifies four observations made by Agent Cordova and argues that taken individually, these observations do not give rise to reasonable suspicion. The observations identified by Defendant in his Objections include Agent Cordova's failure to recognize the Defendant's vehicle as belonging to one of the local citizens from the area, her conclusion that since the vehicle was registered out of Phoenix it may be involved in alien or drug smuggling, her testimony that the Defendant's vehicle was riding low specifically because she has no particular knowledge of the Defendant's vehicle, and her conclusion that since the vehicle was relatively clean with only dust on

the bumper meant that it had only recently been driven on the dirt road.

While individually, any one of these factors may not amount to reasonable suspicion to stop a vehicle, in deciding whether the totality of circumstances constitute a reasonable suspicion, it is inappropriate to view each factor in isolation and to give no weight to factors for which an innocent explanation may exist. *United States v. Arvizu*, 534 U.S. 266, 274 (2002).  Additionally, Agent Cordova relied on many more factors than those identified by the Defendant.

Prior to stopping the Defendant's vehicle, sensor activity alerted Agent Cordova that there was vehicular traffic in an area frequented by individuals attempting to avoid the SR 191 border patrol checkpoint.  After Agent Cordova responded to the location of the sensor, she observed the Defendant's vehicle, which was driving alone, on a dirt road near a desolate area that is frequented by alien and drug smugglers attempting to evade the SR 191 border patrol checkpoint.  Even though the Defendant was driving on a dirt road, his vehicle was relatively clean, leading Agent Cordova to conclude that it had only recently been driven on the dirt road.  Agent Cordova was unfamiliar with the Defendant's vehicle despite her knowledge of many of the local vehicles normally seen in that area.  The Defendant's vehicle was registered out of Phoenix where many alien and drug smuggling vehicles observed in that area are registered.  Finally, the rear of the vehicle appeared to be hanging low to the ground as through it was carrying a heavy load.  Further, Agent Cordova has extensive experience in the area as a Border Patrol Agent.

In viewing all the factors relied upon by Agent Cordova and after a *de novo* review of the evidence, the Court concludes that Agent Cordova had reasonable suspicion to stop the Defendant's vehicle.

Accordingly, IT IS ORDERED:

1. The Report and Recommendation, (Doc. 68), is ADOPTED.

2. Defendant's Motion to Dismiss, (Doc. 47), is DENIED.

Dated this 5th day of November, 2013.

_____
Cindy K. Jorgenson
United States District Judge